IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM R. HOUSER, | ) | CASE NO. 5:04CV1655 |
| | ) | |
| Petitioner, | ) | JUDGE O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HEMANN |
| | ) | |
| ATTORNEY GENERAL OF THE | ) | **REPORT AND RECOMMENDATION** |
| STATE OF OHIO, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Adam Houser's ("Houser") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on August 18, 2004 (Docket #1). Houser is in custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Houser*, Case No. CR-01-02-0414 (Summit County 2001). For the reasons set forth below, the magistrate judge recommends that the petition be denied.

I

On February 23, 2001 the Summit County Grand Jury indicted Houser on one count of burglary. A subsequent supplementary indictment added two more counts of burglary. Houser claims that the charge of burglary arose from the following events. On December 20, 2000, Houser and friends went to a bar for a few hours. When Houser became tired, the result of alcohol and a prescribed muscle relaxant that he was taking, his friends

dropped him off at his apartment.  Only after his friends had driven away did Houser discover that they had taken his apartment keys.  Fearing that he would fall asleep and die, Houser eventually went to the apartment of a neighbor whose light was on.  According to Houser, he knocked on the door and called out but got no response.  Houser then discovered that the door was unlocked and entered the apartment.  Houser claims that he stood inside the door and called "Hello" several times.  Eventually, his neighbor came downstairs and began yelling at him.  Houser explained his problem, but the neighbor demanded that he leave.  Eventually, Houser contends, he walked to another residence, contacted his mother, and obtained a spare key.  Houser was arrested the following afternoon for burglary.  The neighbor alleged that she saw Houser speaking on a cell phone in front of his apartment after leaving her apartment, thus contradicting his claim that he had to enter her house to seek help.

Houser's attorney and the prosecutor reached an agreement whereby Houser would take a polygraph test to verify his contention that he entered his neighbors house only out of necessity.  It was agreed that if Houser passed the polygraph test the charges against him would be reduced to trespass, whereas if he failed, the results of the test would be admitted against him in court and two counts of burglary would be raised from fourth degree felonies to second degree felonies.  Houser consented to this arrangement.  When he failed the polygraph, the prosecutor raised two of the counts of burglary from fourth degree felonies to second degree felonies as agreed.

Houser's attorney and the prosecutor then reached a plea agreement.  In return for Houser's guilty plea to one of the second degree felony counts of burglary, the prosecutor would nolle the remaining two counts and would recommend a sentence of three years

rather than seeking a potential eight year sentence.[1] Houser contends that he protested to his attorney that telephone records would show that he made no telephone call that night and that his family and friends would testify that they dropped him off without keys and later helped him obtain a spare set of keys. Counsel directed Houser to obtain the telephone records and told him that the testimony of friends and family was generally of little value in establishing an alibi. In discussing Houser's possible sentence, Houser's attorney told Houser that he had been burglarized a short time before and that the judge hearing Houser's case gave that defendant a lengthy sentence. The attorney also told him that he was a part-time prosecutor in Cuyahoga Falls and that from his experience, Houser's case would be an easy victory for the prosecution. Houser finally agreed to plead guilty but only, according to Houser, after being threatened by his attorney and stating that he would declare his innocence in court despite his guilty plea.

The court held the plea colloquy on July 24, 2001. During the hearing following exchange occurred:

> THE COURT: Mr. Houser, you have heard your attorney indicate to me at this time you are prepared to withdraw your former plea of not guilty, wish to enter a plea of guilty to one count of burglary, a felony of the second degree, with the understanding the remaining counts in the indictment will be dismissed; is that correct?
>
> THE DEFENDANT: Yes.

Transcript of Plea, attached to Petition, p. 6  The court then informed Houser of the rights he was waiving by pleading guilty. The court asked Houser if he had talked his case over with his attorney and was satisfied with his attorney's work on his behalf. Houser said,

---

[1] Houser had prior convictions for a drug offense and bank robbery. He was on parole for the latter offense when he was indicted for burglary.

3

"Yes" to both inquiries. The court also informed Houser of the possible sentence for pleading guilty, including a term of imprisonment of up to eight years and a fine of $20,000, and asked if Houser was aware of that possibility. Houser said he was. Upon the court's inquiry, Houser also denied that anyone had promised him anything or threatened him in connection with his plea. Houser then pleaded guilty. When asked if he wanted to say anything on his behalf, the following exchange occurred:

> THE DEFENDANT: There's really nothing I can say except I am pleading guilty because I don't think I can win at trial and I'm sorry. I am just doing the right thing with my lawyer here. I understand what's going on here. It's a hard decision for me to do that.
> I mean, honestly, Your Honor, you all have a job here to do and I have been in trouble in my life before; and I recently got released from prison a couple years ago and I have been a productive person for two years. I worked straight, I worked hard, I mean, 13 hours a day, and this one incident occurred where I was asking for help because I was locked out and it snowballed into something else.
> And here I am, you know, and I am pleading guilty because I don't think I can win at trial, and with the advice of my attorney, the way we discussed the facts and everything, that's all I can say.
>
> THE COURT: Counsel --
>
> MR LoPRINZI [the prosecutor]: Judge, I want to indicate to the court he be may [sic] referring to the stipulated polygraph in this case.
>
> THE COURT: Okay. It was a stipulated polygraph?
>
> MR LoPRINZI : Yes, Your Honor.

The court then sentenced Houser to three years' imprisonment in accord with the terms of the plea agreement.

Houser did not file a direct appeal. On December 19, 2001 Houser petitioned the sentencing court for post-conviction relief. On April 28, 2003 the sentencing court denied Houser's petition on the merits.

Houser, *pro se*, timely appealed to the state appellate court the denial of his petition

for post-conviction relief. In his appeal, Houser raised five assignments of error:

> I. TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN OVERRULING PETITIONER'S MOTION TO STRIKE RESPONDENTS [sic] MOTION TO DISMISS.
>
> II. TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW ON EACH CLAIM IN THE PETITION AND FAILING TO GIVE SPECIFIC REASONS WHY APPELLANT'S AFFIDAVITS LACKED CREDIBILITY.
>
> III. TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN CONCLUDING THAT THERE WAS NO ACTUAL CONFLICT OF INTEREST THAT RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AND DISQUALIFICATION OF THE PROSECUTOR.
>
> IV. TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO FIND THAT COUNSEL WAS INEFFECTIVE IN SUBJECTING APPELLANT TO A COERCED STIPULATED POLYGRAPH THAT CAUSED APPELLANT TO RECEIVE 3 YEARS IMPRISONMENT THAT HE OTHERWISE WOULD NOT HAVE RECEIVED BUT FOR COUNSEL'S ERRONEOUS ADVICE.
>
> V. TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY ACCEPTING APPELLANT'S GUILTY PLEA WHICH WAS INVOLUNTARY AND SHOULD BE VACATED DUE TO APPELLANT'S IN-COURT STATEMENTS.

On December 17, 2003 the appellate court found that Houser's fifth assignment of error was barred by the doctrine of res judicata, and it considered the merits of his first four assignments of error and overruled them. Consequently, the state appellate court affirmed Houser's conviction and sentence.

Houser, *pro se*, filed a notice of appeal to the Ohio Supreme Court on January 20, 2004. Houser asserted five propositions of law in his memorandum in support of jurisdiction.

> Proposition of Law No. 1: A Court abuses its discretion when it concludes that a part-time prosecutor appointed to represent an indigent defendant is not a conflict

5

of interest requiring a presumption of prejudice contrary to O.R.C. §120.39(A).

Proposition of Law No. 2:  Counsel subjecting his client to a stipulated polygraph that contains a stipulation to raise the original charge of F-4 burglary to two F-2 burglaries if his client fails the polygraph is ineffective assistance of counsel.

Proposition of Law No. 3:  It is not harmless error when the trial court considers the state's response to the post-conviction petition past the 10-day rule of R.C. §2953.21(D) when the state failed to show "good cause" and the trial court relied on their argument of affidavit credibility.

Proposition of Law No. 4:  A Court abuses it's [sic] discretion when it fails to make proper findings of fact and conclusions of law and by not giving specific reasons why Appellant's affidavits lack credibility.

Proposition of Law No. 5:  Application of res judicata on appeal cannot apply to a post-conviction claim that a plea is invalid under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) when the trial court barred any appeal of the issue at sentencing, and then ruled on the merits during post-conviction review.

The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question on April 14, 2004.

Houser filed, *pro se*, a petition for a federal writ of habeas corpus on August 18, 2004, raising four grounds for relief:

Ground One:  Appointment by the court of a part-time criminal prosecutor to represent an indigent criminal defendant in the same county is an actual conflict of interest and denied Petitioner effective assistance of counsel under the Sixth Amendment of the United States Constitution.

Ground Two:  Counsel subjecting his client to a stipulated polygraph that contained a stipulation to raise the original charge of fourth-degree burglary to two second-degree burglaries if his client fails the polygraph denied Petitioner effective assistance of counsel under the Sixth Amendment of the United States Constitution.

Ground Three:  A claim of innocence coupled with a guilty plea that goes unaddressed by the trial court contrary to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) is an invalid plea and denied Petitioner Due Process of law under the Fourteenth Amendment of the United States Constitution.

Ground Four: Ohio Appellate Court erred in applying *res judicata* on an appeal to bar a post-conviction claim that a plea is invalid under *North Carolina v. Alford*, 400

> U.S. 25, 37 (1970) when the trial court erroneously barred any appeal of the issue on the record and then ruled on the merits during post-conviction review.  As a result, Petitioner was denied Due Process of law under the Fourteenth Amendment of the United States Constitution.

Respondent filed an Answer/Return of Writ ("Answer") on March 4, 2005 (Docket #15). Houser filed a Reply to Respondent's Answer on March 21, 2005 (Docket #16).  On August 5, 2005 the court adopted the magistrate's Report and Recommendation (Docket #20) and dismissed Houser's third and fourth grounds for relief without prejudice to exhaust his remaining state remedies while retaining jurisdiction over his first and second grounds for relief.

Houser moved in the state appellate court for leave to file a delayed appeal.  On October 31, 2005 the state appellate court denied Houser's motion and dismissed his appeal because he failed properly to file a notice of appeal with his motion.

Houser filed a Traverse of November 4, 2005, arguing that all his claims are now exhausted (Docket #23).  Thus, the petition is ready for decision.

II

*A.     Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Houser was sentenced by the Court of Common Pleas of Summit County, Ohio.  Houser is on parole pursuant to his sentence.  A prisoner who is

free on parole is sufficiently in custody to seek a writ of habeas corpus. *Jones v. Cunningham*, 371 U.S. 236, (1963). Houser filed his writ of habeas corpus in the Northern District of Ohio raising claims regarding the constitutionality of his sentence. Thus, this court has jurisdiction over Houser's petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All Houser's claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).

Houser has no remaining state remedies for his claims. Thus, Houser has exhausted his state remedies.

*D. Procedural default*

Respondent argues that petitioner has procedurally defaulted his third and fourth grounds for relief. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Generally, courts apply a four-part test to determine whether a habeas claim has been procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental

9

miscarriage of justice." *Coleman*, 501 U.S. at 750.

In the instant case, the state appellate court denied Houser's petition for a delayed appeal because he failed to comply with Ohio App. R. 5(A) by filing a notice of appeal with his motion for leave to file a delayed appeal.  Houser does not deny that he failed to file such a notice, nor does he argue that Ohio App. R. 5(A) is not an adequate and independent state ground upon which Ohio can rely to foreclose habeas review.  Moreover, Houser does not show cause for his failure to follow the rule or that actual prejudice resulted from the alleged constitutional errors.  For these reasons the magistrate judge recommends that the court dismiss Houser's third and fourth grounds for relief as procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is

"clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.  "[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*

Houser argues that use of the AEDPA's standard of review is not appropriate in his

case because the state courts wrongly refused to reach the merits of his claim that his guilty plea was invalid. The state appellate court *did*, however, reach the merits of Houser's first and second grounds for relief upon Houser's appeal of the sentencing court's denial of his petition for post-conviction relief. Consequently, Houser's argument is unavailing as to those claims. The magistrate judge will consider Houser's remaining grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.      *Ineffective assistance of counsel due to conflict of interest*

In his first ground for relief Houser alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment because the court appointed a part-time criminal prosecutor to represent Houser in the same county in which counsel served as a prosecutor. This, according to Houser, created a conflict of interest that affected counsel's representation of Houser. In particular, Houser alleges that counsel's representation was deficient with regard to counsel's advice regarding witness credibility and the law of necessity, counsel's alleged failure to investigate and obtain alibi evidence, and counsel's alleged failure to consider how Houser's prior record would affect a trial. Respondent denies that a conflict of interest violated Houser's right to effective assistance of counsel.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This

> requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

13

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

The sentencing court reviewing Houser's petition for post-conviction relief made the following findings of fact and law in response to Houser's contention that his counsel's service as a part-time prosecutor resulted in a conflict of interest which impaired counsel's representation of Houser:

> [F]irst . . . the Court has no proof that Petitioner's counsel is indeed a part-time prosecutor for Cuyahoga Falls Municipal Court other than Petitioner's allegations. Secondly, Cuyahoga Falls Municipal Court is a city court and if counsel were employed there, he would be a member of the city prosecutor's office.  This Court is a county court and counsel was appointed through the Summit County Court of Common Pleas.  The prosecutor's office responsible for handling cases filed within this court is the Summit County Prosecutor's Office.  The county prosecutor's office

14

and the city prosecutor's office are in no way related.

Order, April 28, 2003, *Houser*, Case No. CR-01-02-0414 at 7-8, attached to Petition.

In the instant case, Houser again produces no evidence that his counsel was a part-time prosecutor at the time of his representation of Houser.[2] Houser also does not deny alleging that his counsel was a part-time prosecutor with the Cuyahoga Falls Municipal Court, that Houser was prosecuted by the Summit County Prosecutor's Office, and that the county prosecutor's office and the city prosecutor's office are in no way related. Consequently, Houser's contention that he was denied effective assistance of counsel in violation of the Sixth Amendment because his counsel had a conflict of interest arising from service as a part-time criminal prosecutor must fail because Houser does not establish any factual basis for this allegation.

Moreover, even if Houser had established a factual basis for the alleged conflict of interest, this would not be sufficient to obtain relief. The state sentencing court found with respect to "dissatisfaction with counsel's advice on witness credibility, Petitioner's allegations that counsel failed to review or subpoena alibi evidence, Petitioner's dissatisfaction with counsel's advice on the law of necessity, . . . and Petitioner's allegations that counsel failed to review how Petitioner's prior record would affect the outcome," Order at 7, that counsel's assistance was not ineffective. The state appellate court affirmed the state sentencing court's determination. The burden is on Houser, therefore, to show by clear and convincing evidence that these determinations by the state courts were

---

[2] For this reason the court does not use the framework detailed in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), for analyzing conflicts of interest. The Sixth Circuit has held that such an analysis should be employed only in cases of conflicts arising from simultaneous multiple representations. *See Whiting v. Burt*, 395 F.3d 602, 617-20 (6th Cir. 2005).

erroneous. In support of the validity of Houser's account of the facts on which his allegation of ineffective assistance of counsel rests, Houser provides only his own self-serving declaration.[3] This is insufficient to carry Houser's burden of proof.

Finally, Houser also fails to show that the plea agreement he reached with the prosecutor was the result of ineffective assistance of counsel and prejudiced him with respect to the sentence he received. Houser was facing three counts of burglary, a potential eight year term of imprisonment, and a $20,000 fine. By pleading guilty to one count of burglary, the remaining counts were dismissed, Houser reduced the term of imprisonment to three years, and he avoided a fine. Considering that Houser had two prior felonies and was on parole at the time of the offense, he can hardly argue that the agreement was the product of ineffective representation.

Houser does not establish the factual predicate for a conflict of interest; does not show by clear and convincing evidence that the state courts erred in concluding that counsel was not ineffective with regard to his advice regarding witness credibility and the law of necessity, counsel's alleged failure to investigate and obtain alibi evidence, and counsel's alleged failure to consider how Houser's prior record would affect a trial; and does not show that he was prejudiced at sentencing by his attorney's alleged ineffective

---

[3] Although Houser does not refer to them in his briefs to this court, the record also includes a Request for Deposition of Witness upon Written Questions Pursuant to Civil Rule #31 completed by Mary A. Doshak, Houser's mother, attached to Appellant's Brief in Support of Post-Conviction Appeal ("App. Brf."), Answer, Exh. 11, and the Declaration of Richard Castelucci ("Castelucci"), also attached to App. Brf. Although these are potentially relevant, they are insufficient. The Castelucci declaration is not notarized or dated and which does not appear to have been signed. Either the lack of notarization or the lack of signature is enough to preclude this court from considering the declaration as evidence. A deposition of a petitioner's mother which tends to support a petitioner's account is not clear and convincing evidence that the conclusions of two state courts are erroneous.

assistance. For these reasons, the magistrate judge recommends that the court overrule Houser's first ground for relief.

B.     *Ineffective assistance of counsel relating to the use of the polygraph*

Houser also contends that he was denied the effective assistance of counsel because counsel subjected him to a polygraph test on the stipulation that if Houser failed the polygraph the two fourth-degree burglaries would be raised to two second-degree burglaries. Respondent denies that this was ineffective assistance of counsel and denies that the alleged ineffective assistance prejudiced Houser.

The state sentencing court found that Houser failed to demonstrate that his counsel's advice with regard to the polygraph was ineffective or that Houser was prejudiced by the alleged ineffective assistance. The state appellate court affirmed these findings. Again, the burden is on Houser to show by clear and convincing evidence that these determinations by the state courts were erroneous. Houser's own declaration, the only support he provides for his allegations, is not clear and convincing evidence that the state courts erred. For this reason the magistrate judge recommends that the court overrule Houser's second ground for relief.

IV

For the reasons given above the magistrate judge recommends that the court deny Houser's petition for a writ of habeas corpus.

Date:  March 31, 2006            /s/Patricia A. Hemann
                                               Patricia A. Hemann
                                               United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).